## 11669

### STATE v. ROGERS

#### (126 S. E., 329)

1. Homicide—Failure to Instruct That Search Warrant Was Invalid not Error, Where Defendant Claimed Self-Defense.— In prosecution for assault and battery with intent to kill officer who had entered defendant's premises to make a search under a warrant, in which defendant admitted having shot at officer, but claimed to have acted in self-defense, failure to instruct that warrant was invalid *held* not error.

---

Note: Authorities discussing the question of right to eject customer from store, are collated in notes in 9 A. L. R. 379, and 33 A. L. R. 421.

2. HOMICIDE—INSTRUCTIONS THAT DEFENDANT HAD NO RIGHT TO KILL DECEASED TO PREVENT SEARCH UNDER ILLEGAL WARRANT HELD NOT ERRONEOUS.—In prosecution for assault with intent to kill officer, in which defendant did not claim to have made any effort to eject officer, but claimed self-defense, instructions that defendant had no right to kill officer to prevent search under illegal warrant *held* not erroneous as depriving defendant of right to claim immunity from law of retreat or freedom from fault in bringing on difficulty.

3. HOMICIDE—RIGHT TO PROTECT PROPERTY HELD AVAILABLE ONLY TO EXTENT THAT IT WOULD ABSOLVE DEFENDANT FROM FAULT AND DUTY TO RETREAT.—In prosecution for assault with intent to kill officer who had entered defendant's premises, in which defendant did not claim that he had tried to eject officer, but that he shot him in self-defense, the right to defend his property was an essential part of his case only to extent that it would absolve him from bringing on the difficulty and from duty to retreat.

4. HOMICIDE—PROPRIETOR ASSAULTED WHILE EJECTING TRESPASSER IS WITHOUT FAULT IN BRINGING ON DIFFICULTY, AND NOT BOUND TO RETREAT.—The proprietor of a place of business has the right to eject trespasser and to use such reasonable force short of killing him as may be necessary to so do, and, if assaulted in exercise of such right, is without fault in bringing on the difficulty, and not bound to retreat.

Before JOHNSON, J., Anderson, November, 1924. Affirmed.

Steve Rogers was indicted for assault and battery and resisting officer. From a verdict of guilty on the first count, defendant appeals.

The sixth and seventh exceptions were as follows:

(6) Error of the Court in charging the following: "I charge you in that connection this, gentlemen: That the occupant of a mercantile house or a place of business has no right to kill an officer to prevent a search of those premises, even though the officer be proceeding under an invalid warrant, or without a warrant at all. In other words, as I understand the law, it is this: That, if an officer proceeds to search a place of business without a warrant, or under an invalid warrant, he is a trespasser; but the fact that one is a trespasser in a place of business or upon one's premises at

his home—not in the home itself or within the curtilage of the home—that the occupant would not have the right to kill to get him off of those premises." It is respectfully submitted that one has the legal right to control his mercantile house or place of business, and that he has the right to eject any one from the building who abuses the privilege, and, if the occupant finds it necessary, in the exercise of his lawful rights, to lay hands on him to eject him, he can legally justify the assault.

(7) Error of the Court in charging the following: "But at a remote place on the premises, or at the place of business of a person, if a trespasser enters peaceably, not for the purpose of doing any personal harm to the occupant, why, then, he should be ordered to leave, and, if he refuses to leave, and continues to trespass, why the occupant would not have the right to kill to prevent a search of the place of business." It is respectfully submitted that one has the legal right to prevent a search of his place of business under an invalid warrant, or no warrant at all, and, if one persists in making such unlawful search, the occupant would have the right to eject him, using reasonable force for the purpose of such ejection.

*Messrs. A. H. Dagnall* and *T. Frank Watkins,* for appellant, cite: *Unlawful search can be resisted by force:* 111 S. C., 180; 2 R. C. L., 556, 558, 559; 1 Whart. Crim. L. (10th Ed.), 588, Sec. 627; 9 A. L. R., 379; 33 A. L. R., 417, 427. *Officer cannot swear out and then execute a warrant:* Crim. Code 1922, Secs. 44, 45.

*Messrs. L. W. Harris, Solicitor,* and *G. Cullen Sullivan,* for the State, cite: *Search warrant may be executed by person who took it out:* Crim. Code 1922, Sec. 853; Sec. 44 repealed; Acts 1924, p. 935. *Defendant was not resisting search and acting in defense of person:* 68 S. C., 323. *Judge charged properly on law of self-defense on one's own premises:* 116 S. C., 537; 43 S. C., 116. *What force can*

*be used to resist trespass:* 59 Ala., 1; 25 A. S. R., 494; 8
S. C. L., 34; 5 C. J., 744; 22 L. R. A. (N. S.), 724; 25 A.
L. R., 525, 563; 32 A. L. R., 1541; 248 S. W., 1059; 12
Am. Rep., 200.

January 29, 1925.

The opinion of the Court was delivered by MR. JUSTICE
MARION.

The defendant, Steve Rogers, was tried (1) for an assault
and battery with intent to kill one L. A. Martin and (2) for
resisting an officer, the said L. A. Martin, in the discharge
of his duty. The jury found the defendant not guilty of
resisting an officer, but guilty of an assault and battery with
intent to kill. From·the sentence imposed the defendant
appeals.

The defendat was the owner and operator of a gasoline
"filling station" just outside the city limits of Anderson.
The prosecutor, L. A. Martin, was a State Constable. On
September 9, 1924, John H. Kay, the Constable of Magis-
trate Charlie Martin, swore out a search warrant before
Magistrate G. H. Geiger, which was directed in the usual
form to the Sheriff, "or any Constable," and authorized
the search of the defendant's filling station for contraband
liquors. On September 20, 1924, eleven days after the war-
rant was issued, the defendant, with the search warrant in
his possession, accompanied by John H. Kay, the Constable
who had sworn out the warrant, and J. W. Blackwell, a
Deputy Sheriff, went to the defendant's place of business,
the filling station, for the purpose of executing the warrant.
The defendant's own version of what then occurred is as
follows:

"The car drove up about 11 o'clock. No one was in the
filling station but myself. I heard the car stop, and I was
behind the counter, bent over running up some bills where
I had some gas and oil bills out, and I never paid any atten-
tion. I knew it didn't stop to get gas, and Mr. Martin

came in, and I just raised up, and he says: 'Steve, I want to look this place over.' 'Well', I says, 'Where is your search warrant?' He says, 'I don't need no search warrant,' and throwed his hand in his pocket. When he did that, I reached on the shelf and shot him. My gun was on the shelf behind me. It stayed there all the time. He didn't show me a search warrant. He didn't have it in his hand. I shot twice. When I asked him about the search warrant, he just threw his hand this way (indicating). I shot twice as fast as I could. Didn't see Kay at all. Didn't see Blackwell till I got outside. There was a great deal of smoke in the room after the first shot. After the shooting I walked out and handed my pistol to Joe Hilliard, Deputy Sheriff. He is peace officer for Equinox Mill and Little Texas. I do not remember saying anything like 'Get away from here.' I said, 'Joe, here's my gun, let's go to town.' Didn't lock the door. I have not been back since as I have been in jail. No effort was made to show me a search warrant. I did not shoot at Mr. Kay. I shot Mr. Martin because he went to his pocket. I knew he was an officer and carried a pistol. I thought he was going to shoot me. I would have allowed him to search if he had told me he had a search warrant or shown me a search warrant. Martin was in the doorway, advancing on into the room. * * * He had his hand back where his pistol usually was before I started for my pistol, and I shot him before he got his out. When Martin came in and said, 'I want to look this place over,' he just spoke it like I would. He did not laugh. I did not shoot to scare him, or shoot at his hand, or anything of that sort. I shot right straight at him. I knew Martin was an officer of the law."

Appellant's first five exceptions are directed to the contention, in substance, that the search warrant under which Martin was proceeding was invalid, and that the trial Judge committed error in not so holding, ruling, and charging. The jury having acquitted the defendant of the charge of

unlawfully resisting an officer in the discharge of his duty, it is apparent, we think, that the jury, in effect, found as a fact that the search warrant was invalid, and that, in so far as defendant's conduct involved the element of refusing to recognize Martin as an officer in the discharge of his duty to execute a search warrant, he was guilty of no offense. Unless, therefore, the trial Court's rulings and instructions in that aspect of the case may be held to have deprived the defendant of some substantial element of his defense on the charge of assault and battery with intent to kill, it is evident that any alleged error in the Court's rulings and instructions as to the invalidity of the warrant is immaterial, and the questions raised in that connection are, for the purposes of this appeal, academic.

The defense interposed to the charge of assault and battery with intent to kill, as fully disclosed by the defendant's own testimony above set out, is a clear-cut plea of self-defense. Defendant does not claim that he shot to prevent Martin from making an illegal search or in the exercise of a right to eject a trespasser from his premises. He says, in effect, that Martin came into his place of business and stated that he wanted to look it over; that he then asked, "Where is your search warrant?" that Martin replied that he needed "no search warrant" and threw his hand to his pocket and advanced; that he thought Martin "was going to shoot" him; and that he thereupon shot, not to scare Martin or at his hand, but "straight at him." In that situation, and in view of the jury's finding in favor of the defendant on the charge of resisting an officer, we cannot see that any alleged error of the Court, in failing to instruct to the effect that the warrant in question here was invalid, deprived the defendant of any benefit of right to which he was entitled in establishing his plea of self-defense.

The more serious question raised is whether, in the view that Martin did not have a valid warrant and entered defendant's place of business for the purpose

of making an illegal search, the defendant's plea of self-defense was improperly restricted or impaired by the Court's instructions to the jury, which are complained of in the sixth and seventh exceptions. Let these exceptions be set out by the Reporter. The Judge, in effect, charged that, while an officer proceeding under an invalid search warrant, or without a warrant, to search a place of business would be a trespasser, the occupant would not have the right to kill him to get him off the premises, but, "if a trespasser enters peaceably not for the purpose of doing any personal harm to the occupant, why then he should be ordered to leave, and, if he refuses to leave and continues to trespass, why the occupant would not have the right to kill to prevent a search of the place of business." The proposition thus announced and clearly charged was that the occupant of a place of business has not the right to kill a bare trespasser to get him off the premises or to prevent a search of the premises by the trespasser. The Court did not charge that the occupant did not have the right to eject or to use force to eject such trespasser, but that he did not have the right, merely to prevent a trespass of the character described, to kill the intruder. That the law as thus stated may not be pronounced erroneous in its application to a trespass of the character described, even in the view that the defense of the law of the castle applies to a man's place of business, we think is sufficiently demonstrated by the full and clear statement of the law applicable "when the occupant is the slayer and stands upon the right to protect his habitation, apart from the plea of self-defense," contained in the opinion (Cothran, J.) of this Court in the recent case of *State v. Bradley,* 126 S. C., 528; 120 S. E., 240, 242. But the defendant here stood on his right of self-defense, and his right to defend his habitation or to protect his property was an essential part of his case only to the extent that such right would absolve him from fault in bringing on the difficulty and from the duty to retreat. Accepting his own version

of the shooting (see *State v. Edwards,* 68 S. C., 323; 47
S. E., 395), this defendant had not, at the time of the
shooting or prior thereto, made any effort, by word or
deed, to eject Martin from his premises.   According to
his own statement, he relied solely on his innocent request
for information followed by an alleged unprovoked as-
sault by Martin with a deadly weapon to establish his
freedom from fault in bringing on the difficulty, and the
Court clearly charged that one attacked upon his own
premises was relieved of the duty to retreat.   We do not
think, therefore, that it may soundly be held that the effect
of the charge was to deprive the defendant of the right to
claim immunity from the law of retreat, or that he was
without fault in bringing on the difficulty.   See *State· v.
Marlowe,* 120 S. C., 205; 112 S. E., 921.   *State v. Bowers,*
122 S. C., 275; 115 S. E., 303.   *State v. Gordon* (S. C.),
122 S. E., 501.   It follows that the charge complained of
cannot be held prejudicially erroneous, and Exceptions 6
and 7 must be overruled.

It may be proper to add in this connection, how-
ever, that the foregoing conclusion is not to be un-
derstood as a declaration that the proprietor of a
place of business, such as a store, shop, office, etc., has no
right to eject one who, either by virtue of a warning be-
fore entry, or as a result of a duly communicated revocation
after entry of an express or implied license to enter has be-
come a trespasser.   That such a proprietor has the right to
eject a trespasser from his premises and to use such rea-
sonable force, short of killing him, as may be necessary to
accomplish the expulsion, is, as we apprehend, well settled.
See note and collation of authorities, 9 A. L. R., 379-382.
If, in the exercise of that right, the proprietor is assaulted
by the trespasser and subjected to such danger of life or of
serious bodily harm as would justify the killing of the as-
sailant under the law of self-defense, obviously he would
have the right to stand on that defense and, if, in fact, en-

gaged in the legitimate exercise in good faith of his right to eject, he would in such case be without fault in bringing cn the difficulty, and would not be bound to retreat.

The judgment of the Circuit Court is affirmed.

MESSRS. JUSTICES WATTS and FRASIER, and MR. W. C. COTHRAN, ACTING ASSOCIATE JUSTICE, concur.

MR. CHIEF JUSTICE GARY and MR. JUSTICE COTHRAN did not participate.