18909

The STATE, Respondent, v. Goss BROOKS and Bill Elrod, Appellants.
(167 S. E. (2d) 307)

*Messrs. G. Ross Anderson, Jr.,* and *Karl L. Kenyon,* of Anderson, *for Appellants,*

*Messrs. Daniel R. McLeod, Attorney General,* and *Emmet H. Clair, Assistant Attorney General,* of Columbia, and *William H. Ballenger, Solicitor,* of Walhalla, *for Respondent,*

April 24, 1969.

Moss, Chief Justice.

Goss Brooks and Bill Elrod, the appellants herein, were tried at the 1967 August term of the General Sessions Court for Oconee County upon an indictment charging them with the murder of Frank Gibby, the alleged offense having occurred on March 10, 1966. The trial resulted in

a verdict of guilty with recommendation to the mercy of the court and they were sentenced to imprisonment for life. Following the conviction of the appellants, a motion for a new trial was made and denied. This appeal followed.

Midway Tavern, adjacent to U. S. Highway No. 123 in Oconee County, was owned by one Joe Brooks, with an interest being held therein by his son, Goss Brooks. The Tavern was managed by one Bill Elrod.

On the night of March 10, 1966, Frank Gibby, accompanied by three of his friends, came to Midway Tavern at about 9:00 P.M. They remained for a short time and then visited other places, returning to Midway at about 11:00 P.M. The appellants were not present at the time but came in later. Elrod was not working the night in question but the place of business was being operated by one Juanita Smith. Elrod, who admittedly had been drinking, reprimanded Juanita Smith for not properly operating the Tavern during his absence and he ordered her to leave. She left the place of business and Gibby went out with her and after they had some conversation they came back into the Tavern and sat down in a booth. It appears that words were exchanged between Elrod and Gibby as to the treatment that had been accorded Juanita Smith. Gibby and his companions were ordered to leave the Tavern. It is the State's contention that Gibby was an invitee of the Midway Tavern and in compliance with the order to leave the Tavern that Gibby went outside into the parking area, being unarmed at the time, and the appellants, each being armed with a pistol, followed him out of the place of business into the parking area where words were exchanged and a scuffle took place between Elrod and Gibby. It was then that the appellants shot and killed Gibby while he was near his automobile.

The appellants testified that inside the Tavern Gibby was arguing with Bill Elrod as to his treatment of Juanita Smith. Gibby was ordered to leave the Tavern and in compliance with said order went outside; the door to the

Tavern was then closed, but Gibby kicked the door open and told Elrod that he was not satisfied with the way he had treated Juanita Smith. They testified that Gibby was cursing and at the time was armed with a pistol. It was at that time that Goss Brooks went outside and was followed by Elrod. They testified that while Elrod was talking with one J. B. Outz, a companion of Gibby's, that Gibby ran up to Elrod and grabbed his gun out of his pocket and threatened to kill the appellants, firing two shots in such attempt. Brooks testified that after Gibby had fired one of two shots that he then fired his gun in order to defend himself. Brooks's gun was fired five times. One bullet was removed from Gibby's body and identified as having come from Brooks's pistol.

We have not recited all of the testimony that was given by the various witnesses at the trial. We have only stated so much of the testimony in behalf of the state and the appellants as is necessary to show the contentions of the state and the appellants with reference to the instructions of the trial judge to the jury.

The trial judge instructed the jury that one who operates a place of business necessarily invites customers to enter the premises and that one who enters as a customer or an invitee the business establishment of another is required by law to conduct himself in a reasonable and proper manner, and that a proprietor or manager or owner of a place has the duty to maintain peace and good order within his place of business. They were further instructed that even though a person has entered the business premises of another, at the invitaton of the manager or owner, his subsequent conduct may be such as to justify a proprietor or manager in revoking the invitation to remain as a guest in said place of business and to order his departure. If he refuses to leave, the proprietor or manager has the right to use such force as may be reasonably necessary to eject the one who has become a trespasser, and he must not use more force than is necessary or reasonable for said purpose.

The appellants interposed a plea of self-defense. The jury was instructed that the burden of proof of such a defense rested upon the appellants and that the elements of such were (1) that the appellants were without fault in bringing on the immediate difficulty, or the necessity of taking human life; (2) that at the time the fatal shot was fired the appellants believed that they were in imminent danger of losing their lives or sustaining serious bodily harm; and (3) that a reasonably prudent man, a man of ordinary firmness and courage, would have reached the same conclusion. The fourth element, known as the law of retreat, was not mentioned in these instructions.

At the conclusion of his charge, the trial judge temporarily excused the jury and gave counsel the opportunity to express objections to the charge or request additional instructions as required by Section 17-513.1 of the Code. The appellants requested the trial judge to clarify his charge to the jury with reference to the right of an owner of a business establishment to eject one who becomes a trespasser as this relates to the plea of self-defense. It is the position of the appellants that in the exercise of their right of ejection, if difficulty ensues, they would be without fault in bringing on the difficulty within the meaning of the first element of self-defense, and would not be denied the right of invoking such defense. This request was refused by the trial judge and the question here is whether such refusal was error.

The appellants interposed two defenses: (1) the right to eject a trespasser from their place of business, and (2) self-defense. The affinity of these available defenses, under the facts stated, was remarked upon in *State v. Griggs,* 218 S. C. 86, 61 S. E. (2d) 653, where it was said that they are cognate. The testimony, whether true or not, shows that the difficulty between Gibby and Elrod and Brooks followed quickly after Elrod had ordered Gibby to leave the premises, and in close and immediate connection therewith. It is thus seen that the question of self-defense was

closely related to the right of the appellants to eject Gibby, who had become a trespasser, from the business premises managed and controlled by the apellants.

In *State v. Rogers,* 130 S. C. 426, 126 S. E. 329, this court held that if in the exercise of the right by a proprietor to eject a trespasser from his premises, the proprietor is assaulted by the trespasser and subjected to the danger of losing his life or of receiving serious bodily harm as would justify the killing of the assailant under the right of self-defense, obviously, he would have the right to stand on that defense and, if, in fact, engaged in the legitimate exercise in good faith of his right to eject, he would in such case be without fault in bringing on the difficulty, and would not be bound to retreat. The following cases are here pertinent: *State v. Bowers,* 122 S. C. 275, 115 S. E. 303; *State v. Bradley,* 126 S. C. 528, 120 S. E. 240; *State v. Gordon,* 128 S. C. 422, 122 S. E. 501; *State v. Martin,* 149 S. C. 464, 147 S. E. 606; *State v. Sparks,* 179 S. C. 135, 183 S. E. 719; *State v. Hewitt,* 205 S. C. 207, 31 S. E. (2d) 257; and *State v. Starnes,* 213 S. C. 304, 49 S. E. (2d) 209.

In the Starnes case this court approved the following charge:

"If in the exercise of that force, after the proprietor has ordered the trespasser to leave, the proprietor is assaulted by the trespasser, and becomes subjected to such danger of losing his life or suffering serious bodily harm as would justify the killing of his assailant, under the law of self-defense, and if engaged in the exercise in good faith of his right to eject such trespasser, he would be in such a case without fault in bringing on the difficulty, and he would not have to retreat."

In view of the testimony and the contention of the appellants, we think that they were entitled to both theories of their defense because such were interrelated. The trial judge, therefore, should have clarified his

charge in accordance with the request of the appellants. In failing to do so he committed prejudicial error. Whether the appellants were acting in good faith in attempting to eject Gibby, and while so doing Gibby assaulted them, was a question of fact for jury determination.

It is provided in Section 16-129.1 of the 1962 Code of Laws of South Carolina, as amended, that "[i]t shall be unlawful for anyone to carry about the person, whether concealed or not, any pistol, except as follows: (8) Any person in his home, or upon his real property, or fixed place of business."

The appellants requested the trial judge to instruct the jury that it was not unlawful for the owner or manager of a business establishment to have a pistol on his premises or upon his person while he was upon his own premises. This request was refused. In view of the cross-examination of the appellants by the Solicitor concerning the possession of pistols and having same on their persons, and inference might have been drawn by the jury that such possession was unlawful. We think the trial judge should have instructed the jury as requested.

The other questions raised by the exceptions of the appellants relate to matters that will not likely arise on another trial and need not be determined.

The judgment of the lower court is reversed and this case remanded thereto for a new trial.

Reversed and remanded.

LEWIS, BUSSEY, BRAILSFORD and LITTLEJOHN, JJ., concur.