16156

## STATE v. DAVIS
(51 S. E. (2d) 86)

*Messrs. McEachin & Townsend*, of Florence, *for Appellant,*

*Messrs. J. Reuben Long, Solicitor,* of Conway, *and George W. Keels,* of Florence, *for Respondent,* 

December 10, 1948.

OXNER, Justice.

Appellant, Mack Davis, was indicted and tried for the murder of Norman Gordon, Jr. He sought to excuse the homicide on the ground of self-defense. The trial resulted in a verdict of guilty with recommendation to the mercy of the Court and he was sentenced to imprisonment for life. The only question to be determined on this appeal is whether in establishing his plea of self-defense, appellant had the right to claim immunity from the law of retreat.

About 11 o'clock on Saturday night, August 2, 1947, appellant shot the deceased in a cornfield near a filling station and store operated by W. H. Hinds in a rural section of Florence County. Some time late that afternoon these two Negroes had an argument at a tobacco barn where the deceased was working, as a result of which the deceased, apparently without much, if any, provocation, slapped or struck appellant and knocked him down. Appellant immediately left the scene. That night about 9 o'clock he came to the store of Mr. Hinds. About an hour and a half later the deceased arrived and asked Hinds to lend him a gun, stating, according to Hinds, "I believe Mack (appellant) is going to shoot me." Hinds refused to do so and told the deceased that he didn't "want any shooting around here." The deceased replied that he had a gun at the tobacco barn which he could get and then left. About the same time or shortly thereafter, appellant went across the road in the direction of his home. Approximately a half hour later Hinds

and several of those in the store heard the sound of a shotgun. They made an investigation and found the deceased lying fatally wounded in the cornfield at a point about 25 or 30 yards from the store and about 15 feet from the road, with a rifle near his body. He died shortly thereafter while being carried to the office of a physician.

Appellant testified that after hearing the conversation between the deceased and Hinds, he became alarmed and went home for the purpose of securing his shotgun, intending to return to the store where he had several matters to attend to. He said that he planned to approach the store from the rear through the cornfield because the deceased might see him first if he entered through the front. According to his testimony, while in the cornfield he saw the deceased approaching and squatted to escape observation but that the deceased when within close range recognized him and raised his rifle, whereupon he (appellant) shot in defense of his life. The theory of the State was that appellant concealed himself in the cornfield for the purpose of shooting the deceased as the latter returned to the store.

Appellant lived at the home of his sister and brother-in-law, a distance of about four-tenths of a mile from the scene of the homicide. The field in question was owned by Hinds and cultivated by appellant's brother-in-law as a sharecropper. Appellant worked for him and had assisted in cultivating this corn, which had been laid by at the time of the homicide, but the record does not disclose whether his compensation was in the form of wages or a share of the crop. The deceased also worked on some farm in the same community.

Counsel for appellant requested the Court "to charge the jury that the defendant was on the premises on which he was working and the law of retreat would not apply to him." The request was refused and the jury was instructed that it was incumbent upon appellant to establish all of the elements of self-defense, including that of retreating, which

the Court then qualified as follows: "I charge you as a matter of law that if a person is threatened with a gun, any kind of firearms, within shooting range, why, obviously there is no duty to retreat; and it is only in cases where a person can with safety avoid a difficulty that he is required to retreat under the law to avoid committing murder."

Before entering into a discussion of the general question of whether appellant is entitled to claim immunity from the law of retreat, we digress by saying that it may be argued with some reason that appellant was not prejudiced by the refusal of his request. If the jury accepted his version of the occurrence, he was assaulted within close range with a rifle and under these circumstances the jury was charged that he did not have to retreat. However, we do not rest our decision on this ground, preferring to leave undecided the question of whether appellant was prejudiced by the refusal of his request.

It is now well established in this State that if a person is assaulted while on his own premises and is without fault in bringing on the difficulty, he is not bound to retreat in order to invoke the benefit of the doctrine of self-defense, but may stand his ground and repel the attack with as much force as is reasonably necessary. *State v. Brooks,* 79 S. C. 144, 60 S. E. 518, 17 L. R. A., N. S., 483, 128 Am. St. Rep. 836, 15 Ann. Cas. 49; *State v. Gibbs,* 113 S. C. 256, 102 S. E. 333; *State v. Bowers et al.,* 122 S. C. 275, 115 S. E. 303; *State v. Bradley,* 126 S. C. 528, 120 S. E. 240; *State v. Gordon,* 128 S. C. 422, 122 S. E. 501; *State v. Quick,* 138 S. C. 147, 135 S. E. 800; *State v. Hewitt et al.,* 205 S. C. 207, 31 S. E. (2d) 257. This is true whether the attack occurs in defendant's home, place of business, or elsewhere on property owned or lawfully occupied by him. It was also held in *State v. Marlowe,* 120 S. C. 205, 112 S. E. 921, 922, that a member of a club, wrongfully attacked by another in the club rooms, was under no duty to retreat, the Court observing: "A man is no more bound to allow himself to be run out of his rest room than

his workshop." In some jurisdictions the rule has been extended so as to relieve the defendant from the necessity of retreating if attacked in any place where he has a right to be, as when he is lawfully on a public street or highway. We have not gone that far. In *State v. McGee,* 185 S. C. 184, 193 S. E. 303, 306, the Court stated that "The fact that the defendant was on a public highway, where all men have equal rights, and in his automobile, did not constitute any one of those special privileges obviating the necessity of retreating before killing." It was held in *State v. Gordon, supra* (128 S. C. 422, 122 S. E. 503), that where a foreman on a farm was assaulted by one of the employees under him at the place where they were working, he was not required to retreat. The Court concluded that the place of work "was the defendant's place of business within the meaning of that term as employed in the law of retreat."

In the case at bar, we do not think under the circumstances that the appellant is entitled to claim immunity from the law of retreat. The homicide did not occur at or within the curtilage of the home in which he resided. This house was located across the public road and at some distance from the scene of the shooting. Nor was appellant attacked while working at his "place of business". It is true that he had assisted during the year in cultivating the corn in this field but his presence, there on the night in question was wholly unrelated to his employment. There is no showing that he even had any interest in the corn crop. Whether his brother-in-law, the sharecropper, would have been required to retreat if attacked in this cornfield under similar circumstances is a question that is not before us.

All exceptions are overruled and judgment affirmed.

BAKER, C. J., and FISHBURNE, STUKES and TAYLOR, JJ., concur.